UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM HELM, )
)
Plaintiff, )　No:
) FILED: APRIL 22, 2008
vs. ) 08CV2304　PH
) JUDGE SHADUR
MARY E. PETERS, SECRETARY OF THE ) MAGISTRATE JUDGE VALDEZ
DEPARTMENT OF TRANSPORTATION, )
) JURY DEMAND
Defendant. )

COMPLAINT
AS AND FOR A FIRST CAUSE OF ACTION
(Title VII-RACE DISCRIMINATION)

NATURE OF ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, 42 U.S.C. 2000 et. seq., against the Defendant, MARY E. PETERS, SECRETARY OF THE DEPARTMENT OF TRANSPORTATION (DOT) having subjected Plaintiff, HELM to racial discrimination by failure to treat him the same as other non-Native-American employees despite William Helm's repeated complaints about same.

JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. & 1331, 1337, 1343, and 1345. Venue is proper in this District under 28 U.S.C. Section 1391 (b). The employment practices hereafter alleged to be unlawful were, at all relevant times, and are still being committed in the Northern District of Illinois, Eastern Division.

## PARTIES

3. HELM is an adult person and a resident of Peachtree City, Georgia, however at all relevant times, HELM was a employee with DOT within the Northern District of Illinois.

4. HELM is an employee of FEDERAL AVIATION ADMINISTRATION (FAA), which is a Department of DOT.

5. At all times relevant, DOT, has been and is a Federal Agency of the Government and MARY E. PETERS, is the Secretary of Transportation of DOT.

6. DOT is an employer as that term is defined under the Civil Rights Act of 1964 as amended in 1991, at all times material to the allegations herein.

## STATEMENT OF CLAIMS

7. HELM repeats and realleges each and every allegation set forth above with the same force and effect as more fully set forth herein.

8. HELM in being discriminated against based upon Race and treated differently than others, includes but is not limited to, the following events:

   I. Forced reassignment-race, national origin/Native-American (December 2005) Denied relocation assistance/Native-American (December 2005)

   II. Denied the opportunity to "swap' with fellow co-workers-race, national origin/National American (April 2006 & October 2006)

   III. Hostile Work Environment (October 2006)-national origin/Native American

   IV. Unequal terms of employment (forced to continue his work responsibilities while on a detail to another department)-race, national origin/Native American

   V. Denied a letter illustrating his detail with another department/race, national origin/Native American

9. Defendant by its action or actions of its agents, caused and created a hostile work

environment which unreasonably interfered with the terms and conditions of HELM's employment and HELM's performance in his job and created a racially hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(c)et seq; as amended by <u>inter alia</u> the Civil Rights Act of 1991.

10. By reason of the racial discrimination of Defendant, HELM has suffered a great pain, humiliation and mental anguish, all to his damage.

11. Further, said action on the part of the Defendant was done with malice and reckless disregard for HELMs' protected rights.

12. HELM has no adequate remedy at law to secure relief. If this court does not enter an order for Defendant to accommodate HELM, HELM will be irreparably injured.

13. HELM filed a discrimination charge against Defendant with the Equal Employment Opportunity (EEO). That charge was timely filed, under the procedures set forth in Title VII of the Civil Rights Act of 1964, <u>42 U.S.C. A. § 2000e-5(e).</u>

14. On February 11, 2008, HELM received notice from the EEO of her right to bring this action (see Exhibit "A"), and HELM timely filed this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Title VII-NATIONAL ORIGIN DISCRIMINATION)

**Nature of the Action**

15. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by <u>inter alia,</u> the Civil Rights Act of 1991, for the Defendant, DOT having subjected HELM, to nationality discrimination by failure to treat him the same as other non-Alaskan-Native employees despite HELM's repeated complaints about same.

16. HELM repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

3

17. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of HELM's employment and HELM performance in his job and created discrimination based upon nationality and a hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991

18. By reason of the national origin discrimination of Defendant, HELM has suffered great pain, humiliation and mental anguish, all to his damage.

19. Further, said action on the part of the Defendant was done with malice and reckless disregard for HELMs' protected rights.

## PRAYER FOR RELIEF

WHEREFORE, HELM prays for judgment as follows:

1. Declare the conduct engaged in by Defendant to be in violation of HELM's rights;

2. For injunctive relief, including but not limited to relief required to make HELM whole for any of the losses caused by the violations of Defendant;

3. For compensatory damages in an amount according to proof;

4. For costs of suit, including reasonable attorney's fees and expert fees, pursuant to 42 U.S.C.A § 12117(a), which incorporates the remedies set forth in Title VII of the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000e-5(k); and

5. For such other and further relief as the court deems proper.

WILLIAM HELM
BY: <u>**Michael T. Smith**</u>
Michael T. Smith
Trial Attorney

Michael T. Smith 6180407IL
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626

4



**U.S. Department of Transportation**

Office of the Secretary
of Transportation

1200 New Jersey Ave., S.E.
Washington, D.C. 20590

February 7, 2008

**FEDERAL EXPRESS #7992 6892 0849**

RE: DOT Complaint No. 2007-20962-FAA-04

Mr. William Helm
c/o Mr. Michael T. Smith, Esq.
Law Offices of Michael T. Smith & Associates
440 West Irving Park Road
Roselle, IL 60172

Dear Mr. Helm:

This transmits the U.S. Department of Transportation's final agency decision in the subject complaint alleging discrimination filed against the Federal Aviation Administration. A finding of no discrimination is made. If you are dissatisfied with this decision, you have the following appeal rights:

-- Within 30 calendar days of your receipt of this final decision, you may appeal this decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. (EEOC Form 573, Notice of Appeal/Petition, is enclosed for this purpose.)

-- Within 90 calendar days of your receipt of this final decision <u>or</u> after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC, you may file a civil action in an appropriate U.S. District Court. The Court, at your request, may appoint and authorize legal counsel in circumstances that it deems just without the payment of fees, costs or security. The granting or denial of the request is within the sole discretion of the Court.

You must name the person who is the official agency head and his or her official title as the defendant in your appeal. In your case, you must name the following official as the defendant:

> The Honorable Mary E. Peters
> Secretary of Transportation
> 1200 New Jersey Avenue, S.E.
> Washington, D.C. 20590

*Exhibit A*

2

Failure to provide the name or official title of the agency head may result in dismissal of your case. Please be advised that at the time you file an appeal or civil action, you must furnish a copy of the documents to the following officials:

>Associate Director, Compliance Operations Division (S-34)
>Departmental Office of Civil Rights
>U.S. Department of Transportation
>1200 New Jersey Avenue S.E.
>3rd Floor, (W76-401)
>Washington, D.C. 20590

>Office of the Chief Counsel (AGC-30)
>Federal Aviation Administration
>U.S. Department of Transportation
>800 Independence Ave., S.W.
>Washington, D.C. 20591

Sincerely,

*[signature]*

Yvette R. Workman, Esq.
Associate Director
Complaints Adjudication and
   Program Evaluation Division
Departmental Office of Civil Rights

Enclosures

cc:  Mr. William Helm
     458 Plantain Terrace
     Peachtree City, GA  30269

     ACR-1

     AGC-30

## FINAL AGENCY DECISION
## COMPLAINT NO. DOT-2007-20962-FAA-04

This is the final Departmental decision in the discrimination complaint filed by Mr. William H. Helm [hereinafter *the Complainant*] against the Federal Aviation Administration (FAA), Department of Transportation (DOT), [hereinafter *the Agency*].

### I.   CLAIM

Whether the Complainant was discriminated against based on his race (Native American) and national origin (Alaskan Native) when he was denied a reassignment to a position in the Chicago area and, effective December 29, 2006, he was reassigned to the position of Program Manager, Planning and Requirements Group, in College Park, Georgia.[1]

### II.   PROCEDURAL BACKGROUND

| | |
|---|---|
| Date of Most Recent Alleged Discriminatory Action: | 10/19/06 |
| Initial Counseling Contact Occurred: | 11/14/06 |
| Notice of Right to File Received: | 01/22/07 |
| Formal Complaint Filed: | 02/06/07[2] |
| Complaint Accepted: | 02/14/07 |
| Investigation Conducted: | 02/07 – 09/07 |
| Report of Investigation Issued: | 09/13/07 |

This decision is being issued pursuant to Title 29, <u>Code of Federal Regulations</u>, (C.F.R.), Part 1614, § 1614.110(b).

### III.   FACTUAL BACKGROUND

   A.   *Complainant's Testimony*

At the time this complaint arose, prior to the restructuring of the Air Traffic Organization (ATO), the Complainant was a Program Manager, FV-301-I, Technical Operations Branch, Program Management Section (AGL-471), Great Lakes Regional Office, in Des Plaines, Illinois. His first-line supervisor was Ms. Maureen Clark, and his second-line supervisor was Mr. Claude Nunez. As of December 29, 2006, he has been a Program Manager, FV-856-I, Planning and Requirements

---

[1] The Complainant was actually reassigned to Fort Worth, Texas, but he subsequently bid on and was selected for a position in College Park, Georgia instead. (Report of Investigation (ROI) Exhibit (Ex.) F1a)

[2] The postmark of the Complainant's complaint is illegible, but the complaint was received on February 6, 2007. (ROI Ex. A1)

Subject: Helm FAD, DOT 2007-20962-FAA-04                                                                 2

Group, Program Management Section, ASO-471, ATO, Southern Regional Office, College Park, Georgia. (ROI Ex. F1a)

The Complainant received a memorandum on August 10, 2006, from Ms. Jo Tarrh, Director, Technical Operations, which stated in relevant part:

> In December, 2005, the Chief Operating Officer of Air Traffic Organization (ATO) informed all ATO employees that we would be transitioning to three unified ATO Service Areas located in Atlanta, Georgia (Eastern); Ft. Worth, Texas (Central); and Seattle, Washington (Western). This transition is expected to be completed by December 31, 2006.
>
> This is official notification that you are being administratively reassigned from your current geographical location to the Planning & Requirements Group in the Central Service Center in Ft. Worth, Texas. Your pay plan, grade/level, and base pay will remain the same. The locality pay for Ft. Worth is 16.39%. This administrative reassignment will be effective December 31, 2006, or earlier based on mutual agreement.
>
> The action to administratively reassign you has no connection to your job performance. We have determined that this action is in the best interest of the government. Therefore, you will be offered permanent change of station (PCS) benefits, which will be paid in accordance with the FAA Travel Policy. ...
>
> You **must** complete and sign the accompanying election statement and return it...within 30 days of your receipt of this letter. Please understand that failure to respond will be considered a declination of the reassignment.
>
> If you decline this administrative reassignment, you will be subject to involuntary separation from the Federal Aviation Administration. In that case, you will be given a separate notice of proposed separation for declining the administrative reassignment. As an employee who is subject to involuntary separation due to declination of this administrative reassignment, you may be eligible to exercise the option to retire under optional or discontinued service retirement (DSR) procedures. Employees not eligible for an immediate retirement annuity may be eligible for severance pay.
>
> Your local Human Resources Management Division (HRMD) is available to provide information and advisory services to you regarding retirement options, severance pay and/or to discuss your specific locality pay after relocation.
>
> Your continued employment with the FAA is important to the Air Traffic Organization. We sincerely hope that you will give serious consideration to making the transition to the Service Center. Your first line supervisor can direct you to the proper resource should you have any questions, require additional information about this important career decision, or wish to initiate your move process.

(ROI Ex. F2)

On September 8, 2006, the Complainant signed the election statement and chose the option which read, "I accept the reassignment outside the commuting area." At the bottom of the signed election statement, he added the following:

> This reassignment is being forced upon me. I am being forced to make a choice between my family and my job and it is causing a hardship on me.
>
> My circumstances are that any relocation would be a hardship on me and my family. My Father is an 82 year old disabled World War II in a wheel chair and I am the only one in the area that provides care and support to him. I also have four children, two in college and two younger ones…age 6 and …age 9 that I see under a shared placement schedule and relocating would mean I would not get to see them.
>
> I have requested an employee swap with a co-worker that wants to relocate in my place. Tony Roetzel of P&R is aware of this and should be working to resolve it.
>
> I will continue to look for a position here in Chicago and be permanently placed into a different position before the move.

(ROI Ex. F2)

The Complainant wanted to remain in the Chicago area, so he requested a detail to the O'Hare Modernization Program (OMP). While he was not formally detailed, he was allowed to work on the program for four months, although Ms. Clark required him to continue to perform his other duties while working on the OMP. The Complainant also submitted several Employee Requests for Reassignment (ERRs) in an attempt to avoid being reassigned to Fort Worth. (ROI Ex. F1a)

The Complainant offered to swap with a coworker, Ms. Magdalena Ochoa, who was working in the Complainant's former series, 851, but at a lower grade, GS-12. Ms. Ochoa wanted to be reassigned to Fort Worth, and the Complainant wanted to remain in the Chicago area. The Complainant was willing to take a downgrade to the GS-12 grade to make the swap possible, but he claims that Ms. Clark did not agree to the swap. (ROI Ex. F1a)

The Complainant believes that he was treated differently from other employees who were allowed to stay in the Chicago area in the Great Lakes Region. He alleges that Ms. Michelle Sabatini worked out a special deal and was allowed to stay in the Great Lakes Region. He claims that Ms. Clark said that Ms. Sabatini was "kissing ass." He alleges that Ms. Clark told him and Ms. Ochoa that one has to "kiss ass." He claims when they asked whose ass they needed to kiss, Ms. Clark replied, "You just have to kiss ass." (ROI Ex. F1)

The Complainant also believes that he was treated differently from Mr. Dennis Baley, who was reassigned to Fort Worth, but who returned to the Chicago area a week later because Mr. Nunez intervened on his behalf. He believes other

employees, including Ms. Jane Melle, Mr. Jeffrey Page, Mr. Brian Gurke, Ms. Jenny Ross, and Mr. Melvin Banks, all received special treatment. (ROI Ex. F1a)

The Complainant alleges that Ms. Clark was aware of his national origin because of his attendance at the Native American Alaska Native (NAAN) conference. He claims that Ms. Clark allegedly made comments to Ms. Ochoa about his attendance at the conference and about his Native American heritage. He alleges that Ms. Clark said "Maybe [the Complainant] can use the Injun card to get a job," and "[The Complainant] is attending the Indian conference." He believes that Ms. Clark did not like his association with NAAN because she resented the fact that the Division had to fund his attendance at the NAAN conference. (ROI Ex. A)

### B.   *FAA Management's Testimony*

Mr. John Pipes (Native American), Transition Executive, ATO Transition Team, FAA Headquarters, Washington, D.C., states that he has no knowledge of the Complainant's race or national origin. He asserts that he was in charge of the group responsible for implementing the realignment. He insists that the decision was made to consolidate the positions, not the specific individuals who occupied those positions. He explains that the Service Area Restructuring plan was a national program that consolidated the overlapping administrative staff and staff support functions in the nine legacy regional offices into a service center with offices in Atlanta, Fort Worth, and Seattle. He further explains that employees in those positions perform financial planning, personnel management, acquisition and contracting, program and material management, technical evaluations, and other duties that support the internal functions of the FAA. He states that the plan resulted in the realignment of about 300 employees nationwide. (ROI Ex. F4)

Mr. Pipes states that effective December 2006, the Complainant's position, along with other impacted ATO administrative and staff support positions assigned to the Great Lakes Region, was transferred to the Central Service Area in Fort Worth, Texas. He explains that the Complainant was not offered a position in the Great Lakes Region because his position was transferred, and he was needed in Fort Worth to perform his duties. He asserts that the only employees who were not reassigned, and who worked in this area, were those employees who found other employment opportunities, retired, or resigned. He states that there was no Service Center work in the Great Lakes Regional Office that could be assigned to the Complainant. (ROI Ex. F4)

Mr. Pipes explains that the Complainant could not swap positions with Ms. Ochoa because she was an Electronics Technician, FV-856-H, and he was a Program Manager, FV-301-I, which was a different series and grade. He asserts that swaps were only allowed between employees in the same series and grade. (ROI Ex. F4)

Subject: Helm FAD, DOT 2007-20962-FAA-04                                                                                  5

Mr. Pipes states that the Complainant accepted the directed reassignment to Fort Worth in September 2006, but he subsequently bid on and was selected for a position as an Electronics Technician, FV-0856-I, in the Eastern Service Center, located in College Park, Georgia. (ROI Ex. F4)

Ms. Maureen Clark (Caucasian, Irish and German), Special Projects Associate Program Manager, FV-301-J, was the Complainant's supervisor at the time of the reorganization. She states that the Complainant was an Operations Program Specialist, FV-301-I, and he was responsible for the Configuration Management Program, which was reassigned to the Central Service Center, Planning and Requirements Group, under Messrs. Gus Nezer and Tony Roetzel in Fort Worth, Texas. She does not know who made the decision to reassign the Configuration Management functions to Fort Worth, but she states that reassignments were based on the program managed, rather than the position held. She asserts that she had no input into the decisions to reassign certain job functions. (ROI Ex. F5b)

Ms. Clark states that she agreed to the Complainant's detail to the OMP office, with the hope that he would get hired there permanently. She also discussed with Mr. Roetzel the possibility of a swap between the Complainant and Ms. Ochoa, but she learned that a swap was not covered in the regulations and would not be possible because of the difference in grade levels between the two positions. She states that she also contacted Mr. Doug Keefe to determine if Technical Operations could place the Complainant. She asserts that Mr. Keefe suggested that the Complainant might be able to return to a Chicago Systems Management Office as an Electronics Technician, but she states that the Complainant was not interested in working as a technician. Ms. Clark is not aware that the Complainant had submitted ERRs. She asserts that she does not have the authority to intervene and prevent the Complainant from finding other positions in Chicago. (ROI Ex. F5a)

Ms. Clark denies making comments about the Complainant's national origin and involvement in NAAN. She denies telling Ms. Ochoa that he was "at his Injun conference." She also denies stating that "maybe he could use his background since he is an Indian." Instead, she explains that the Complainant approached her and asked if he should use his association with NAAN members to try to stay in Chicago, and she told him, "I would use whatever I had available to me." She asserts that Ms. Ochoa was not a party to this conversation. She regarding the alleged comment about Ms. Sabatini not having to relocate, Ms. Clark recalls that when the Complainant and Ms. Ochoa asked her why others did not have to move, she replied, "I guess you need to know whose butt to kiss." (ROI Ex. F5a)

Mr. Barry Cooper (Caucasian, English), Manager, Chicago Area Modernization Program Office, FV-2186-K, Great Lakes Regional Office, Des Plaines, Illinois, states that the Complainant performed specific work activities in his office, in support of the FAA's work on the OMP initiative in 2006, as a collateral duty assignment. The Complainant remained in his position of record within the ATO.

He asserts that he became aware of the Complainant's national origin during a brief, informal, cordial discussion, during which the Complainant gave him a coffee mug from NAAN and said he was active in the NAAN organization. He states that he learned the Complainant wanted a position with OMP, and he also learned that the Complainant's work would be temporary because of his reassignment to Fort Worth. (ROI Ex. F6)

Mr. Cooper states that the Complainant supported the OMP for several months in 2006, although he did not operate under a specific position description, and he was not detailed into a position. He asserts that the Complainant carried out his job functions effectively and provided valuable assistance to the OMP while he supported the OMP work. He states that the Complainant's work at the OMP ended when he reached the point of departure for his reassignment to Fort Worth. He asserts that there was no permanent position on the OMP for which the Complainant could have been selected. He is not aware of anything Ms. Clark did which could have been construed as hindering anything. He points out that Ms. Clark had the authority to deny the Complainant's request to support the OMP's work, but she did not do that. (ROI Ex. F6)

Mr. Cooper also recalls a discussion with Ms. Clark, regarding the Complainant continuing some of his duties of his permanent ATO position while supporting the OMP's work. He states that he told Ms. Clark that the ATO needed to determine what work they needed from their employee while he assisted the OMP office and that he would be grateful to accept whatever remaining portion of the Complainant's time was available to support their OMP work, after ATO work needs were satisfied. (ROI Ex. F6)

Mr. Claude Nunez (Hispanic), Manager, Engineering Services, Communications, Telecommunications Engineering, AJW-C-13, was the Complainant's second-line supervisor from 2001 to February 2005. He is aware that the Complainant is Native American. He states that the Complainant's position, which was primarily Configuration Management, was one of the workloads nationally that was slated to be relocated to the Service Area offices, located in Fort Worth, Texas. He was aware that the Complainant wanted to remain in the Chicago area. He does not know whether the Complainant bid on any positions in the Great Lakes Region. (ROI Ex. F7)

Mr. Nunez states that he does not recall telling the Complainant and Ms. Ochoa that "something could be worked out" regarding their proposed swap. He does recall advising them to speak with Human Resources. He states that the swap did not take place because Permanent Change of Station funding would not apply, and Ms. Ochoa also had a change of heart. He asserts that Ms. Clark made every effort to support the employees' requests, and despite difficult circumstances, she remained very professional throughout the process. (ROI Ex. F7)

Mr. Nunez states that he had no involvement in bringing Mr. Baley back to the Great Lakes Region. He explains that Mr. Baley's position, Non-Federal workload, was impacted by the ATO restructuring and was reassigned to Fort Worth. He states that Mr. Baley subsequently bid on a position in the Elgin Terminal Radar Approach Control (TRACON) and was selected. (ROI Ex. F7)

Mr. Anthony Roetzel (Caucasian), Planning and Requirements Group Manager, FG-2186-L, Central Service Center, ATO, FAA Southwest Regional Office, Fort Worth, Texas, states that the Complainant was reassigned to the Planning and Requirements Group in Fort Worth, but he subsequently bid on a position in the Elgin TRACON and was selected. (ROI Ex. F7)

Mr. Roetzel recalls that the Complainant requested to swap positions with Ms. Ochoa, but they occupied positions of different job series and grades. Consequently, he advised the Complainant and Ms. Clark that Human Resources regulations would not allow the swap. (ROI Ex. F7)

    C.    *Other Witnesses' Testimony*

Ms. Debra Larson (Caucasian, Irish/German/Austrian), Personnel Management Specialist, Employment Services, Great Lakes Regional Office, Des Plaines, Illinois, states that prior to December 2006, the Complainant told her about his reassignment and that he did not want to be reassigned. She asserts that the Complainant hoped to swap jobs with Ms. Ochoa in order to stay in Chicago. She states that while she played no role in this, she did explain to him that a job swap is for two people in the same occupation (series) and grade, and that was not going to be an option for him because Ms. Ochoa was in a different series and grade. She asserts that she told the Complainant on several occasions that the proposed swap could not work, but for some reason, he kept coming back under the impression that it could work. She explains that management would make the decision about the reassignment, and Human Resources would verify that the rules and qualification requirements would be met. (ROI Ex. F9)

Ms. Magdalene Ochoa (Hispanic, Spanish/Mexican), Electronics Technician, Program Coordinator, FV-856-I, FAA Great Lakes Region, Des Plaines, Illinois, managed the Test Equipment Program, which was not relocated to Fort Worth. She asserts that she agreed to swap positions with the Complainant so that he could remain in Chicago. She states that he agreed to take a downgrade, and he had been in the 856 series before he was converted to the 301 series. She asserts that she spoke to someone in the Human Resource Management Division, who told her that it would be management's discretion whether to allow the swap or not. She states that Ms. Clark was opposed to the swap and said it would not work because the Complainant and Ms. Ochoa were in different grades and series. (ROI Ex. F10)

Ms. Ochoa states that she told Ms. Clark, "I think that if the swap is not approved, [the Complainant] should go to civil rights, management is not helping him, even though he is willing to take a downgrade." She asserts that Ms. Clark replied, "Yeah, because he's Indian right? Or has some percentage of Native American Indian in him?" She explains that she was not thinking in those terms, but more along the lines of the promises of the FAA and ATO that they would help everyone find other positions to remain in the area if they faced a hardship in moving. (ROI Ex. F10)

Ms. Ochoa states that on one occasion, she and the Complainant went to Ms. Clark to discuss their proposed swap. She asserts that when they asked how others in the sections seemed to be getting preferential treatment, Ms. Clark asked to whom they were referring. Ms. Ochoa states that she replied, "Like Shelli Sabatini, she did not even have to move from her old desk even though her job relocated to Kansas, she got to stay and work from here." She states that Ms. Clark said, "That's because she kissed someone's ass." Ms. Ochoa asserts that she then replied, "I want to know whose ass to kiss!" (ROI Ex. F10)

Ms. Ochoa recalls that on one occasion, she needed information on a project she and the Complainant were working on, and when she asked Ms. Clark where the Complainant was, Ms. Clark replied, "[The Complainant] is attending the Indian Convention, representing all his 5% Indian Heritage, he won't be back until next Monday." She states that she could sense Ms. Clark's sarcastic tone of voice, and she felt uncomfortable because she (Ms. Ochoa) attends some of the Spanish heritage functions, and this incident made her feel that Ms. Clark did not endorse these types of activities. She believes that Ms. Clark perceived the Complainant's involvement in the Native American functions as a waste of time and an opportunity that the Complainant took to be off from work. (ROI Ex. F10)

Ms. Ochoa states that while the Complainant was working on the OMP, she offered to take on the responsibility of Configuration Management, Local Change Proposals. She asserts that when she approached Ms. Clark with this, Ms. Clark told her, "No, I let [the Complainant] go to OMP with the stipulation that he would still carry his work load." She states that she told Ms. Clark she had the time, she did not mind helping him, and that she just needed a little refresher training from the Complainant. She asserts that Ms. Clark said, "Then, absolutely not, if it requires training, I don't want you to do it. If you have additional time, maybe you can help in the Air Space Program." (ROI Ex. F10)

Mr. Alexander Sampra (American of Jewish/Greek descent), Electronics Engineer, FV-855-13, Operations Engineering Branch, FAA Great Lakes Regional Office, Des Plaines, Illinois, knows that there were some negative comments made about the Complainant and Native Americans and some derogatory terms he actually heard being used, but he does not remember the comments or the terms. He states that it was about eight months prior. (ROI Ex. F30)

Mr. Thomas Stanonis (Caucasian, American), Systems Engineer, FV-855-I, Engineering Services, Operations Engineering Support Center, ATO, FAA Great Lakes Regional Office, Des Plaines, Illinois, states that Ms. Clark would joke something to the effect of "[The Complainant]'s trying to be an Indian, with his 1/10th Indian, to take advantage of that." He states that this was when the Complainant was trying to find a position in Des Plaines, Illinois. He also asserts that Ms. Clark called Ms. Ochoa a "12-grade Hispanic" when the Complainant was willing to take a downgrade from a 13 to a 12 to stay in the Des Plaines area. (ROI Ex. F31)

Mr. Stanonis adds the following:

> [The Complainant] used to have posters from the conference on his wall. There was an aura that Maureen Clark recognized him as only trying to be "Indian". (sic) She would make it a point to note that he was trying to be a Native American; like being a fake one. She was saying he was taking advantage of something he was not. She never acknowledged him as being an (sic) Native American.

(ROI Ex. F31)

   D.   *Other Evidence*

The following shows how the reorganization affected others who were in the Program Management Branch (AGL-471) under Ms. Clark:

| Employee | Race | Position at Time of Reorganization | Received Relocation Letter | Moved to Fort Worth | Reason for Staying in Chicago |
|---|---|---|---|---|---|
| Dennis Baley | Caucasian | NF/Ops Program Specialist/PC, FV-301-J | Yes | No | Was offered new position night before he was supposed to move to Fort Worth |
| Melvin Banks | African American | Non-Federal Program Manager, FV-301-J | No, but he believes his position was reassigned to Fort Worth | No | Submitted ERR which was accepted prior to time his old position was reassigned to Fort Worth |
| Lynette Dupree | African American | Detailed to AGL-471 | No | No | Returned to position of record in March 2007 |
| Bill Ibbotson | Caucasian | Safety and Occupational Health Manager, FV-018-I | Yes | Yes | N/A |

| Employee | Race | Position at Time of Reorganization | Received Relocation Letter | Moved to Fort Worth | Reason for Staying in Chicago |
|---|---|---|---|---|---|
| Sam Lakhani | Asian | Electronics Technician-Airspace, FV-856-I | No | No | Position was not reassigned to Fort Worth |
| Magdalena Ochoa | Hispanic | Electronics Technician, FV-856-I | No | No | Position was not reassigned to Fort Worth |
| Vicki Richard | Caucasian | (on detail) Operations Specialist-NIM, FV-301-I | No | No | Returned to position of record in March 2007 |
| Jenny Ross | Caucasian | Senior Engineer (RPMES), FV-801-J | Yes | No | Bid on 35 open positions with FAA and other agencies and was hired into new position |
| Regina Sabatini | Caucasian | Electronics Technician, FV-856-I | No | No | Position was not reassigned to Fort Worth |
| Michelle Sabatini | Caucasian | Operations Program Manager, FV-301-I | No | No | Job responsibilities were reassigned to the respective control center within her geographical area (Midstates Operations Control Center in Olathe, Kansas) |
| Wayne Vogelsburg | Caucasian | Environmental Safety Manager, FV-018-I | Yes | Yes | N/A |
| Cheri Walter | Caucasian | Electronics Technician, FV-856-I | No | No | Position was not reassigned to Fort Worth |

(ROI Exs. F10-21)

The Complainant named others he believes were treated differently in that they did not have to move to Fort Worth (Mr. Douglas Page, Ms. Jane Melle, Mr. Jody Oles, Mr. Stanley Lee, Mr. Brian Gurke, Mr. Bernard Woolridge, Mr. Oswald Bunda, and Ms. Ellen Kijowski), but none of these employees worked in the same organization as the Complainant (AGL-471), and none of them worked for Ms. Clark. (ROI Exs. F22-29)

## IV. **APPLICABLE LAW**

<u>Title VII of the Civil Rights Act of 1964</u> (Title VII), as amended, prohibits discrimination on the basis of race and national origin. The order and allocation of burdens of proof under <u>Title VII</u> have been established by the Supreme Court. *See* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Absent direct evidence of discrimination, the complainant must establish a *prima facie* case of discrimination by a preponderance of the evidence.[3] <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

In order to establish a *prima facie* case, the Complainant must show that 1) he is a member of a protected group(s); 2) he was similarly situated[4] with employees outside of his protected group(s); and 3) he was treated differently from those employees outside of his protected group(s). <u>Costa v. Secretary of the Department of Defense</u>, EEOC Appeal No. 01911914 (1991).

The burden then shifts to the Agency to articulate legitimate, nondiscriminatory reasons for its action. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). The Agency need only produce evidence sufficient "to allow the trier of fact to rationally conclude" that the Agency's actions were not based on unlawful discrimination. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). The Agency must, however, "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." <u>Id.</u>

If the Agency succeeds in meeting its burden of production, the Complainant must establish that the Agency's stated reasons are pretext designed to hide intentional discrimination. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 519 (1993). The EEOC has said that a Complainant may establish pretext by presenting evidence sufficient to establish either: 1) that the Agency officials more likely than not were motivated by discriminatory animus, or 2) that the Agency's proffered explanation is false, regardless of motive. <u>Allen v. Corps of Engineers</u>, EEOC Appeal No. 01941656, 4410/C3 (1995). While the presence of errors, mistakes or questionable

---

[3] A *prima facie* case is not the equivalent of a finding of discrimination. It is simply proof of actions taken by the Agency from which discriminatory animus may be inferred, because experience has proven that in the absence of any other explanation, it is more likely than not those actions were bottomed on impermissible considerations. <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 568 (1978).

[4] Employees are considered similarly situated, when all relevant aspects of the employees' work situations are identical or nearly identical. <u>Terzi v. Department of Labor</u>, EEOC Appeal No. 01943055 (1995) (*citing* <u>Smith v. Monsanto Chemical Co.</u>, 770 F.2d 719, 723 (8th Cir. 1985)). Where employees work in different departments, have different supervisors, perform different jobs, and have different functions, they are not similarly situated. <u>Terzi</u>, (*citing* <u>O'Neal v. USPS</u>, EEOC Request No. 05910490 (1991); <u>Allen v. Department of the Navy</u>, EEOC Request No. 05900539 (1990)).

credibility permit a finding of discrimination, such a finding is not required if evidence is insufficient to show discriminatory motive or intent. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993). A *prima facie* case of discrimination, combined with sufficient evidence for a reasonable factfinder to reject the Agency's non-discriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2000 U.S. LEXIS 3966 (June 12, 2000).

## V.    ANALYSIS

The Complainant has established that he is a member of two protected groups in that he is Native American and an Alaskan Native. He has shown that he was similarly situated to other Program Managers outside of his protected groups who worked for Ms. Clark. He has also established that he was treated differently than Ms. Michelle Sabatini in that he was reassigned to Fort Worth, Texas, whereas she was able to physically remain in Des Plaines, Illinois. Based on the foregoing, we find that the Complainant has established a *prima facie* case of race and national origin discrimination.

The FAA, through Mr. Pipes, articulates legitimate, nondiscriminatory reasons for its action, i.e., a decision was made to restructure the ATO nationwide, which consolidated the overlapping administrative staff and staff support functions in the nine legacy regional offices into a service center with offices in Atlanta (College Park), Fort Worth, and Seattle. This plan resulted in the realignment of about 300 employees nationwide. Mr. Pipes noted that the decision was made to consolidate the positions, not the specific individuals who occupied those positions. We also note that Mr. Pipes has no knowledge of the Complainant's race or national origin. With respect to Ms. Michelle Sabatini's situation, her job responsibilities were not reassigned to Fort Worth, but they were reassigned to the respective control center within her geographical area (Midstates Operations Control Center in Olathe, Kansas).[5] Based on the foregoing, we find that the FAA has met its burden of proof for its action.

The Complainant, who has the ultimate burden of proof, fails to show evidence of pretext, i.e., that the reassignments were based on who occupied the positions reassigned rather than the positions themselves, or that other employees performing the same duties as the Complainant in other legacy regional offices were not also reassigned to one of the service center offices.

The Complainant has attempted to offer evidence of a discriminatory animus. While the record does contain corroborating testimony that Ms. Clark has made sarcastic statements about the Complainant's race, we find these are insufficient to establish a discriminatory animus. We also note that Ms. Clark had nothing to do

---

[5] The record does not contain an explanation as to why Ms. Sabatini was not required to relocate to Olathe, Kansas, but was allowed to remain in Des Plaines, Illinois.

with the decision to reassign the Complainant to Fort Worth. The Complainant also argues that Ms. Clark interfered with his attempt to swap positions with Ms. Ochoa. We find credible the explanation that the swap was not possible because the Complainant and Ms. Ochoa were in different series and in different grades. The Complainant also believes that Ms. Clark somehow interfered with his attempts to find another position in the Chicago area, but he has failed to offer any evidence whatsoever to establish that she did so. We note that Ms. Clark stated that she was not aware that he had submitted any ERRs.

Having failed to establish that the FAA's articulated reasons were pretextual and having failed to offer sufficient evidence of a discriminatory animus, the Complainant cannot prevail in his claim.

## VI.  CONCLUSION

Therefore, it is the final decision of the Department of Transportation that a finding of no discrimination is made in this matter.