IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
WILLIAM HELM,                     )
                                  )
              Plaintiff,          )
                                  )
    v.                            )    No.  08 C 2304
                                  )
RAY LAHOOD, Secretary of the      )
United States Department of       )
Transportation,                   )
                                  )
              Defendant.          )
```

## MEMORANDUM OPINION AND ORDER

William Helm ("Helm") has brought this action against his current employer, the Federal Aviation Administration ("FAA"), charging it with violating Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§2000e to 2000e-17) by (1) employment discrimination on the basis of race and national origin and (2) racial harassment creating a hostile work environment. Secretary of the Department of Transportation Ray LaHood[1] has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and the motion has been fully briefed. For the reasons stated here, the Rule 56 motion is granted.

### Standard of Review

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v.

---

[1] As is required when any agency of the federal government is involved, the named defendant is the head of the relevant executive cabinet--here Secretary LaHood. Accordingly all future references to the defendant will simply read "Secretary."

Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider evidentiary records in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts viewed on the terms stated in the preceding paragraph. That pro-Helm perspective--or at least its scope--may of course be impacted to the extent that Helm has or has not complied with the strictures of this District Court's LR 56.1.[2]

**Background**

In December 2005 John Pipes, the Chief Operating Officer of

---

[2] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed on. This opinion identifies Helm's and Secretary's respective submissions as "H." and "S.," followed by appropriate designations: LR 56.1 statements as "St. ¶--"; responsive statements as "Resp. St. ¶--"; statements of additional facts as "Add. St. ¶--"; exhibits as "Ex.--"; and a memorandum as "Resp. Mem.--."

2

FAA's Air Traffic Organization ("Organization"), announced a plan to restructure the Organization's nine service centers in an effort to reduce operating costs (S. Ex. A. at 337-38). Those service centers were consolidated into three service centers in Seattle, Washington, Fort Worth, Texas and Atlanta, Georgia, and 300 positions were reassigned (S. St. ¶¶5-6).[3] Any reassigned employee who did not wish to relocate could look for an alternative placement in the Chicago area or, absent such a placement, would face involuntary separation or, in some cases, early retirement (H. Ex. G). To take advantage of the first option, an employee could bid on open positions or submit an Employee Reassignment Request ("Request") to the supervisor of the FAA unit with which the employee wished to obtain an employment position (S. St. ¶¶8, 10).

In 2005 Helm, who is of Native American descent, worked at the Organization's Airways Facilities Division for the Great Lakes Region in Des Plaines, Illinois (S. St. ¶2). Helm was an Operations Program Specialist in the Organization's Planning and Requirements group[4] (id.). Maureen Clark ("Clark") was his

---

[3] In an effort to bolster his case, Helm points out that the mandatory reassignment plan was terminated in 2009 and the reassignment letters sent to employees in 2008 were rescinded (H. Resp. St. ¶¶1-2). Those events, however, are simply irrelevant for purposes of evaluating Helm's Title VII claims based on conduct that occurred in 2006.

[4] Helm was categorized as a FV-301-I employee, which denoted his occupational title or series (301) and pay rate or

first-line supervisor, and Claude Nunez ("Nunez") was his second-line supervisor (id.).

In August 2006 Director of Technical Operations Jo Tarrh notified Helm that effective December 31, 2006 he was being reassigned to the Planning and Requirements group at the Texas service center, which was supervised by Anthony Roetzel ("Roetzel")(H. Ex. G at 1; S. Ex. A at 395). Helm accepted the reassignment but noted that the relocation would be burdensome because his father and four children lived in the Chicago area and needed Helm's support (S. Ex. A at 135).

Of Helm's 12 co-workers in the program management branch, five others faced reassignment as well, and each took steps to avoid it (D. Ex. A at 12-13). Three found alternative positions in the Chicago area. Caucasian male[5] program specialist Dennis Baley was reassigned to the Texas service center but successfully applied, by Request, for a National Airspace Systems Specialist position (S. St. ¶29). African-American male Non-Federal Program Manager Melvin Banks was reassigned in March 2006 and successfully submitted a Request to the O'Hare Modernization Program ("Program") headed by Barry Cooper ("Cooper")(S. St. ¶12). And Caucasian female senior engineer Jenny Ross ("Ross")

---

grade (I)(S. St. ¶23).

[5] All references to the race and sex of FAA employees have been included here solely on an informational basis because of the nature of Helm's employment discrimination claims.

successfully applied for a position in the Navaids/Infrastructure Construction/Installation Center in Chicago (S. Ex. A at 471).

But the other two employees facing reassignment were not as fortunate. Caucasian male safety and occupational health manager Bill Ibbottson ("Ibbottson") and Caucasian male environmental safety manager Wayne Vogelsburg were reassigned to the Texas center and, after unsuccessful attempts to secure Chicago area positions, ultimately relocated there (S. St. ¶¶30-32).

There were seven remaining employees in the program management group who were not affected by the Organization's restructuring plan. Two of the employees were temporarily detailed to that group and, later during the restructuring, returned to their original positions: African-American female Lynette Dupree returned to her position in the Telecommunications Group (S. Ex. A at 31), and Caucasian female Vicki Richard returned to her position in the Operations branch (S. Ex. A. at 466). Four others--Pakistani male Saleem Lakhani ("Lakhani"), Hispanic female Magdalene Ochoa ("Ochoa"), Caucasian female Regina Sabatini and Caucasian female Cheri Walter were all electronics technicians whose positions had not been reassigned (S. Ex. A at 12-13). And the seventh, Caucasian female Operations Program Manager Michele Sabatini ("Sabatini"), had her job duties transferred to the Midstates Operation Control Center in Kansas but was not required to relocate from Chicago (S. Ex. A

5

at 365, 491).

As for Helm, he deployed three different strategies to avoid reassignment. First, he sent Requests and unsolicited e-mails to various supervisors of FAA units, none of whom extended an offer of employment (H. Ex. E). Second, he began to perform a support function in the Program for several months in 2006 while still performing his duties as an Operations Program Specialist, in the hope that a permanent position within the Program would become available (S. Ex. A at 383-84).[6] But ultimately there were no permanent positions available in the Program for which Helms could have been selected (id. at 384).

---

[6] Although Rule 56 imposes a duty on this Court to construe facts, supported by affidavits, in a light most favorable to Helm, that duty is tempered by the mandate in Rule 56(e)(1) that "a supporting or opposing affidavit must be made on personal knowledge" of the affiant. Moreover, Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001) teaches that self-serving "conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment." Helm contends, based on an affidavit filed by Thomas Stanonis ("Stanonis"), that he was reassigned to the Program until Clark colluded with Ellen Kijowski to have him returned to her department and later reassigned (H. St. ¶3; H. Ex. C at 3). But Stanonis in no way indicates how he would have personal knowledge of that event. Second, Helm states that Haley Hendrickson was managing the Engineering Drawing and Review process at the Program, and that after she had left, Cooper let Helm take over her duties (H. St. ¶5). That statement, however, is based on nothing in the record except Helm's own affidavit, which merely states that Helm asked Cooper "if I could work there backfilling for a employee that had just left. He agreed and I support that office for 4 months." With no admissible evidence as to any involvement by Clark, Helm's unsupported assertion that he was reassigned to the Program until Clark intervened to have him reassigned cannot be credited.

Third, Helm approached two employees who had not been reassigned--first Lakhani and later Ochoa--about swapping positions with Helm, so that they would go to Texas in Helm's place. Employees within the same pay grades and position levels were eligible for such swaps, subject to approval by both their management and the Human Resources department ("HR")(S. Ex. A at 399). Because Lakhani and Helm were at the same "I" pay grade, Clark and HR approved the swap (S. St. ¶17). Lakhani, however, later backed out for personal reasons (id.).

In about September 2006 Helm approached Ochoa with the same idea. Because Ochoa's position as an electronic technician was at a lower level than Helm's,[7] he proposed to accept a downgrade to that position so that Ochoa could relocate to Texas in Helm's place (S. St. ¶18). Helm and Ochoa then approached Debra Larson ("Larson"), a personnel management specialist in HR, about the feasibility of the swap, and Larson responded that HR would do whatever management wanted and that she would take care of the paperwork as long as Helm's managers approved (H. Ex. J. at 3). Helm and Ochoa then met with Nunez, who endorsed the swap (H. Add. St. ¶10). Roetzel, however, did not believe HR regulations would allow the swap, because Ochoa would be "swapping into a promotional position" (S. Ex. A. at 396). Clark said she

---

[7] Before becoming a program manager, Helm started as an "856" electronics technician, the same position that Ochoa held at the time Helm proposed the swap (S. St. ¶24).

7

believed the swap to be against FAA policy because of the difference in Helm's and Ochoa's grade levels (S. Ex. A. at 343-44). Ultimately the swap failed.

With his second swap defeated, Helm sent a Request to the Atlanta service center for a position there. That led to an offer that Helm accepted, and he started work there on December 24, 2006 (S. St. ¶26).

In attempted support of his allegations of racial discrimination, Helm points to several comments made by Clark. First, when Helm and Ochoa approached Clark to ask why Sabatini did not have to relocate, Clark responded, "you need to know what ass to kiss" (S. Ex. A at 148). Second, when Ochoa suggested that Helm should go to FAA's civil rights division because he was making no progress in his alternative placement efforts, Clark remarked, "because he's Indian right? Or has some Native American Indian in him" (S. Ex. A at 406). Third, at some unspecified time Ochoa asked about Helm's whereabouts, and Clark responded that Helm was at a Native American Alaskan Native conference "representing all 5% of his Indian heritage" (S. Ex. A at 412). Finally, according to Stanonis, Clark joked, in reference to Helm's attempt to find a position in Des Plaines, that "Will's trying to be an Indian, with his 1/10th Indian, to

8

take advantage of that" (H. Ex. C at 6).[8]  Helm also claims that Clark said he could use "the Injun card to get a job" (D. Ex. A at 7).

## Employment Discrimination Claim

Helm claims that he was discriminated against on the basis of his race by being denied certain opportunities in the Chicago area after he was reassigned to Texas.  More specifically, Helm argues that Clark prevented him from successfully swapping positions with Ochoa or allowing him to work full-time at the Program and that she did nothing affirmative to help Helm find another position.[9]

As is now well-established, a plaintiff may prove discrimination in a Title VII action through direct evidence of discrimination or via the familiar burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Those alternatives will be explored seriatim.

Under the direct approach a Title VII plaintiff must produce

---

[8] Stanonis also states in his affidavit (H. Ex. C at 6):

> There was an aura that Maureen Clark recognized [Helm] as only trying to be "Indian."  She would make it a point to note that he was trying to be a Native American; like being a fake one.  She was saying he was taking advantage of something he was not.  She never acknowledged him as being an [sic] Native American.

[9] Helm does not challenge his reassignment to the Texas service center itself.  Rather, his complaints relate to the efforts (or lack of efforts) to help him find an alternative position in the Chicago area.

9

evidence, either through admissions or circumstantial evidence, that points directly to a discriminatory reason for an employer's action. Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 491 (7th Cir. 2001)(internal quotation marks omitted) reconfirms earlier teaching that:

> Circumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

Under step one of the McDonnell-Douglas analysis, a plaintiff must establish a prima facie case by showing[10] that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably" (Gusewelle v. City of Wood River, 374 F.3d 569, 574 (7th Cir. 2004)). If that is done, "the burden

---

[10] This is not literally true in the summary judgment context, for here Helm does not have to "show" or "prove" or "establish" anything: Rule 56 requires only that he demonstrate the existence of a genuine issue of material fact to defeat Secretary's motion for summary judgment. Although this opinion regularly uses the more demanding locution in a shorthand manner, both to avoid the cumbersome repetition of the summary judgment standard and to echo the language of controlling caselaw, this Court has properly imposed the lesser burden on Helm.

10

shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action" (id.). If the employer meets that burden of production (not persuasion), the plaintiff must "show that the employer's proffered reasons are merely a pretext for discrimination" (id.).

**Direct Establishment of Discrimination**

Helm offers no statements by Clark, Cooper or any other FAA supervisor that even approximate an admission of discriminatory motive for their denial of Helm's reassignment attempts. Helm therefore urges that Clark's oral statements are circumstantial evidence sufficient to meet his burden under the direct method. But even though such indisputably race-based remarks could create an inference of an anti-Native-American bias on Clark's part, such comments by someone that far down the food chain are rarely enough to serve as direct evidence of discriminatory motive on the part of the employer itself (Hemsworth, 476 F.3d at 491). Instead "a particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action" (id. (emphasis added)). If then Helm cannot show that Clark was the decisionmaker, he must show that Clark "possess[ed] so much influence as to basically be herself the true functional decision-maker" (Brewer v. Bd. of Trs. of Univ. of Ill., 479 F.3d 908, 917 (7th Cir. 2007)(internal

11

quotation marks and brackets omitted).

On that score Helm clearly fails. Clark was neither the decisionmaker nor sufficiently influential over the true decisionmaker as to any of Helm's failed attempts to remain in the Chicago area. First, Clark was clearly not the decisionmaker as to Helm's efforts to secure an alternative position through submitting Requests to other departments and agencies--indeed, Clark was not even aware that such Requests were made (S. Ex. A at 344). Although Helm asserts that Clark discussed Helm's collateral duties at the Program with Cooper, telling Cooper that Helm would be "moving to Texas no matter what," Cooper himself explained that there were no open positions for which Helm could have been considered (S. Ex. A at 384). That decision was governed by Cooper alone.

As for the proposed swap between Helm and Ochoa, both management and HR shared responsibility for approving such proposals (S. Ex. A at 399). Hence neither Clark nor Larson nor Roetzel can be considered the sole decisionmaker in that regard, and Helm has pointed to no evidence suggesting that Clark exerted or wielded any degree of influence over either Larson or Roetzel in their conclusion that the swap violated FAA policy.

For those reasons, none of the comments made by Clark are properly considered as direct evidence of discrimination by FAA itself. Helm's attempt under that method of proof therefore

fails as a matter of law.

**Indirect Establishment of Discrimination**

In terms of the indirect approach exemplified by the McDonnell-Douglas formulation, even if it is assumed arguendo that Helm can establish the first three components of his prima facie case as set out in that opinion, he must still show that a similarly situated employee who is not a member of his protected class was treated more favorably in securing an alternative assignment (Gusewelle, 374 F.3d at 574; Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)).[11] And that requirement turns out to be fatal to Helm's claim.

Radue, 219 F.3d at 617 reconfirms the obvious principle that "[i]n determining whether two employees are similarly situated a court must look at all relevant factors." Although "the similarly situated inquiry is a flexible one" (Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007), plaintiffs like Helm must "show at a minimum that the retained or transferred...

---

[11] Helm's Resp. Mem. 11 seeks to rely on Leffel v. Valley Fin. Servs., 113 F.3d 787 (7th Cir. 1997) to argue that he "is not required to establish that he was treated differently than other employees." But that mischaracterizes the burden articulated by Leffel. Although Leffel, id. at 793 explains "that the nature of the proof giving rise to the requisite inference of discrimination cannot be reduced to a formula that will serve any and all discrimination cases," that generalization does not save Helm from having to establish that inference here. And so while evidence of disparate treatment may not lend itself in certain cases to an analysis of discrimination, nothing in Leffel eliminates that requirement in cases such as Helm's.

13

employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought, and that the...employees obtained the desired positions around the same time as the RIF" (Radue, 219 F.3d at 618).

One need look only to the plaintiff in Radue to understand why Helms' claim is deficient. Like Helm, Radue alleged that his employer failed to assist him in securing another position after the employer eliminated Radue's position due to a reduction in force (id. at 615). Because Radue pointed to employees with different qualifications or employees who were not affected by the reduction in force or employees who obtained new positions for reasons unrelated to the reduction, Radue held that he had failed to identify a similarly situated employee (id. at 618). Radue, id. also taught that the "substantial similarity" element requires a plaintiff to show "that a common supervisor offered one of these other employees a position for which Radue was qualified, and that this same supervisor also knew about Radue's availability but refused to offer the job to him."[12]

Like Radue, Helm cannot point to a similarly situated employee who received more favorable treatment in obtaining an alternative position in the Chicago area. Although he claims

---

[12] Although more recent caselaw has retreated somewhat from such a strict reading of that component of the analysis (see, e.g., Humphries, 474 F.3d at 404-05), Helms fails even under a less restrictive reading.

14

that Clark has shown a preference for Baley, Walters, Ross, Ibbotson and Regina and Shelli Sabatini, none of those employees are similarly situated to Helm for purposes of considering his claim of race discrimination. Ibbottson was reassigned and relocated to the Texas service center and cannot be said to have received more favorable treatment in his relocation efforts than Helm. Neither Walters nor Regina or Shelli Sabatini was required to relocate as part of FAA's restructuring plan. And although Baley and Ross did obtain alternative positions by sending out Requests, Helm makes no showing that he was qualified for the positions that they obtained or that he sought those positions himself. Moreover, because those positions were in different departments and were under the management of different supervisors, Helm cannot claim that any discriminatory action by Clark was responsible for his failure to obtain an alternative placement.

Even if that were not enough (and it is), Secretary has also articulated legitimate nondiscriminatory reasons for FAA's actions. As for Helm's efforts to obtain a different position in the Chicago area, none of the various FAA departments to which he applied had available positions. As has already been explained, Helm's proposed swap with Ochoa failed for a legitimate and rational reason: Helm and Ochoa were not at the same pay grade or position level and therefore were not eligible to trade jobs.

15

Helm has done nothing in return to show that those explanations were pretextual.[13] To demonstrate pretext "a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation" (Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998)). In the absence of direct evidence of pretext, the plaintiff must prove pretext indirectly by showing "that the employer's reason is not credible or that the reason is factually baseless" (Perez v. Ill., 488 F.3d 773, 777 (7th Cir. 2007)). And the plaintiff "must also provide evidence of at least an inference that the real reason for the adverse employment action was discriminatory" (id. at 778 (internal quotation marks and brackets omitted)). Simply put, Helm's submission does not even approach meeting his burden in that regard.

For those reasons, Helm once again strikes out on his race discrimination claim. With no other methods of proof available to Helm, Secretary is entitled to summary judgment on that claim.

---

[13] Helm attempts to invoke Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) to lessen his burden of showing pretext at the summary judgment stage. But while Reeves teaches that a plaintiff may succeed on a discrimination claim by establishing his or her prima facie case and then providing sufficient evidence of pretext without the further need for additional independent evidence of discrimination, those principles have no bearing on Helm's general burden to establish pretext as part of his proof of discrimination under the indirect method.

**Hostile Work Environment Claim**

Helm also asserts that he was subjected to a hostile work environment because of Clark's comments. On that score Helm must show that (1) he was subject to unwelcome harassment, (2) the harassment was based on his race (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and to create a hostile or abusive atmosphere and (4) there is a basis for employer liability (Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004)).

To be actionable a "hostile work environment must be both objectively and subjectively offensive" (id. at 714). Frequency and severity of adverse comments, as well as whether the comments were humiliating or physically threatening, are all factors to be considered in determining whether an environment is objectively hostile or offensive (id. at 713). As for the subjective element of the analysis, Helm need establish only that he perceived the environment to be hostile or abusive (Hrobowski v. Worthington Steel Co., 358 F.3d 473, 477 (7th Cir. 2004)). Finally, indirect (or secondhand) comments are not weighted as heavily as direct comments (Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1144 (7th Cir. 1997)).

Given that framework, it cannot be said that Clark's alleged comments--when considered, as they must be, in the light most favorable to Helm--were sufficiently pervasive or offensive to

create a hostile work environment.  Clark's comment that "you need to know what ass to kiss" is not related to race at all, so it obviously does not satisfy the second element of the hostile environment analysis.  And as for Clark's few scattered comments about Helm's Indian heritage, they cannot fairly be viewed as sufficiently pervasive or abusive to alter the conditions of Helm's work environment.  First, those comments were made to Ochoa and Stanosis, outside of Helm's presence.  And although Helm may certainly (and understandably) have been offended by Clark's suggestion that he was improperly taking advantage of his heritage, again that fell far short of the requisite poisoning of Helm's work environment.  In short, Helm's second claim fails as well.

**Conclusion**

With no genuine issue of material (that is, outcome-determinative) fact having been identified, Secretary is entitled to a judgment as a matter of law on all of Helm's claims. Accordingly his Rule 56 motion is granted, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 21, 2009